# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

SWAN ENERGY, INC., BRANDON )
DAVIS, JOHN SCHIFFNER, AND )
CODY DAVIS, ) C.A. No. N24C-03-071 MAA
 )
      Plaintiffs, )
 )
      v. )
 )
INVESTOR PROTECTION UNIT OF )
THE DELAWARE DEPARTMENT OF )
JUSTICE, )
 )
      Defendant. )

Submitted: May 6, 2025
Decided: June 24, 2025

*Defendant's Motion to Dismiss:*
**GRANTED.**

## OPINION

Steven P. Wood, Esquire (Argued), MCCARTER & ENGLISH, LLP, Wilmington, Delaware, Attorney for Plaintiffs.

Ian R. Liston, Esquire (Argued), and Evelyn H. Brantley, Esquire, Deputy Attorneys General, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware, Attorneys for Defendant.

**Adams, J.**

## INRTODUCTION

This action concerns the constitutionality of in-house administrative proceedings, brought by the Investor Protection Unit ("IPU") of the Delaware Department of Justice ("DOJ"), alleging violations of the Delaware Securities Act.[1] Plaintiffs,[2] who are defendants in an ongoing in-house IPU proceeding, contend the IPU's in-house proceeding violates the Delaware Constitution's provisions for trial by jury and due process of law.[3] The IPU moved to dismiss the Amended Complaint, arguing the Amended Complaint fails to state claims for which relief can be granted by this Court.[4] This Opinion resolves the IPU's Motion to Dismiss. For the reasons that follow, the IPU's Motion to Dismiss is GRANTED.

## FACTS AND PROCEDURAL HISTORY

The IPU commenced an in-house administrative proceeding against Plaintiffs on November 2, 2020 (the "IPU Action").[5] The IPU Action's complaint alleges Plaintiffs sold securities without proper registration in violation of 6 *Del. C.* § 73-202 and committed securities fraud in violation of 6 *Del. C.* § 73-201.[6] The IPU Action seeks fines, restitution, and "an order to cease and desist the offer and sale of

---

[1] 6 *Del. C.* § 73-101.
[2] Here, the Court collectively refers to Swan Energy, Inc.; Brandon Davis; John Schiffner; and Cody Davis as "Plaintiffs." Docket Item ["D.I."] 8 ["Am. Compl."] ¶¶ 6-9.
[3] Am. Compl. ¶¶ 1-2.
[4] D.I. 10.
[5] Am. Compl. ¶ 23.
[6] *Id*. ¶¶ 24-25.

1

unregistered securities in Delaware and to Delaware investors."[7]  Plaintiffs have not yet been penalized for their alleged misconduct.

Plaintiffs participated in the IPU Action, first raising constitutional objections to the IPU Action's presiding officer (the "Presiding Officer") in December 2020.[8] On October 30, 2023, the Presiding Officer issued an order (the "October 30 Order"), explaining that Plaintiffs should raise their constitutional concerns in "a court of competent jurisdiction" and declaring the Presiding Officer would not hear constitutional challenges in the IPU Action.[9]

On December 1, 2023, Plaintiffs filed an action in the Court of Chancery seeking: (a) a declaration that the IPU Action and IPU in-house adjudication procedures violate Plaintiffs' constitutional rights to trial by jury and due process; and (b) an injunction preventing the IPU Action from proceeding until Plaintiffs' declaratory judgment claims are resolved.[10]  On December 11, 2023, Plaintiffs and the IPU agreed to a stipulation, granted by the Court of Chancery, in which the parties agreed to stay the IPU Action pending adjudication of the constitutional questions.[11]  With the injunction rendered moot, the case was transferred to this Court.[12]  Plaintiffs seek a declaration that the IPU's in-house adjudication procedures

---

[7] *Id.* ¶ 26.
[8] *Id.* ¶ 40.
[9] *Id.* ¶ 46.
[10] *Id.* ¶ 49.
[11] Am. Compl. ¶ 50.
[12] *Id.* ¶ 51.

and the IPU Action violate Plaintiffs' constitutional rights to a trial by jury and due process of law.[13]

The IPU moves to dismiss the Amended Complaint, arguing Plaintiffs' claims are unripe and fail to state a claim for which relief can be granted.[14] This Opinion resolves the Motion to Dismiss.

## STANDARD OF REVIEW

The IPU moves to dismiss the Amended Complaint pursuant to Superior Court Rule 12(b)(6).[15] The "pleading standards governing the motion to dismiss stage . . . are minimal."[16] The court must "accept all well-pleaded factual allegations in the Complaint as true."[17] The court also must "read the complaint generously" and construe all such allegations "in a light most favorable to the plaintiff."[18] The court "credits even vague allegations, so long as they provide the opposing party notice of the claim; gives the non-movant the benefit of all reasonable factual inferences; and denies the motion if recovery on the claim is reasonably conceivable."[19] Dismissal is appropriate only where a complaint is so deficient that the plaintiff "could not

---

[13] *Id.* ¶ 52.
[14] D.Is. 10-11. Citations to the March 26, 2025, hearing addressing the Motion to Dismiss are in the form "Tr. #."
[15] D.I. 10.
[16] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011) (citing *Savor, Inc. v. FMR Corp.*, 812 A2d 894, 896-97 (Del. 2002)).
[17] *Id.*
[18] *Henry v. Middletown Farmers Mkt., LLC*, 2014 WL 4426311, at *2 (Del. Super. Sept. 8, 2014).
[19] *Agahi v. Kelly*, 2024 WL 1134048, at *7 (Del. Super. Mar. 15, 2024) (citation modified).

recover under any reasonably conceivable set of circumstances susceptible of proof."[20]

The Supreme Court of Delaware has instructed that legislative enactments receive a "strong presumption" of constitutionality under Delaware law.[21] "Every presumption is in favor of the validity of a legislative act and all doubts are resolved in its favor."[22] The court defers to legislative judgment on matters which are "fairly debatable"[23] and "[a]ll reasonable doubts as to the validity of a law must be resolved in favor of the constitutionality of the legislation."[24] Constitutional prohibitions to legislative action must be shown by "clear and convincing evidence."[25] "One who challenges the constitutionality of a statute has the burden of overcoming the presumption of its validity."[26]

---

[20] *Cent. Mortg.*, 27 A.3d at 536.

[21] *Op. of Justs.*, 425 A.2d 604, 605 (Del. 1981) ("Initially, we note the strong judicial tradition in Delaware in support of a presumption of the constitutionality of a legislative enactment.").

[22] *Justice v. Gatchell*, 325 A.2d 97, 102 (Del. 1974); *Wilm. Med. Ctr., Inc. v. Bradford*, 382 A.2d 1338, 1342 (Del. 1978).

[23] *Helman v. State*, 784 A.2d 1058, 1068 (Del. 2011) (citing *Bradford*, 382 A.2d at 1342).

[24] *Hoover v. State*, 958 A.2d 816, 821 (Del. 2008) (quoting *McDade v. State*, 693 A.2d 1062 (Del. 1997) (citation omitted)).

[25] *Albence v. Higgin*, 295 A.3d 1065, 1088-1089 (Del. 2022) (citation omitted).

[26] *Bradford*, 382 A.2d at 1342.

4

## ANALYSIS

### A. Plaintiffs' Due Process Claim Fails for Lack of a Deprivation of Life, Liberty, or Property.

The IPU argues Plaintiffs' procedural due process claim is unripe, as Plaintiffs have not yet suffered any injury.[27] The IPU contends a plaintiff must suffer deprivation of life, liberty, or property before said plaintiff can allege a procedural due process claim.[28] Plaintiffs offer no direct counterargument. Plaintiffs do not allege they have been deprived of life, liberty, or property. Plaintiffs instead assert the IPU "*seeks to* deprive" the Plaintiffs of property and liberty interests – the IPU seeks to deprive Plaintiffs of their money and the opportunity to sell securities in Delaware and to Delaware investors.[29] Plaintiffs might succeed in the IPU Action, avoiding any loss of property or liberty.

"Only after finding the deprivation of a protected interest does the Court look to see if the State's procedures comport with due process."[30] Plaintiffs' due process

---

[27] D.I. 11 ["MTD"] at 22-23.

[28] *Id*. (quoting Erwin Chemerinsky, *Procedural Due Process Claims*, 16 Touro L. Rev. 871, 871–72 (2015)) ("All procedural due process questions can be broken down into three sub-issues. First, is there a deprivation? Only if there is a deprivation does the court need to go any further in its procedural due process analysis.").

The IPU relies on federal constitutional jurisprudence. Count II of the Amended Complaint alleges violations of the Delaware Constitution. The Delaware Constitution's due process provision has "substantially the same meaning" as the due process provisions of the United States Constitution. *Op. of Justs.*, 246 A.2d 90, 92 (Del. 1968) (citation omitted). The elements of a due process claim are therefore identical under both Constitutions.

[29] Am. Compl. ¶ 64; D.I. 16 ["MTD Opp'n"] at 33 (emphasis added).

[30] *Croda, Inc. v. New Castle Cty.*, 2021 WL 5027005 (Del. Ch. Oct. 28, 2021), *aff'd*, 282 A.3d 543 (Del. 2022) (citation modified); *See In re New Maurice J. Moyer Acad., Inc.*, 108 A.3d 294, 317-18 (Del. Ch. 2015) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999)) (same).

5

claim must be dismissed until Plaintiffs can demonstrate the IPU deprived Plaintiffs of property or liberty. The Court need not address the parties' other arguments regarding Count II.

## B. Plaintiffs' Right to a Jury Trial Claim is Ripe.

The IPU contends Plaintiffs' right to a jury trial claim is not ripe for adjudication under the Declaratory Judgment Act.[31] The IPU argues Plaintiffs have yet to suffer any injury from the IPU proceeding.[32]

*1. Plaintiffs show sufficient standing to bring a declaratory judgment claim alleging a violation of the right to trial by jury.*

Unlike for the due process claim, the IPU does not argue that a litigant must allege deprivation of life, liberty, or property before asserting the right to trial by jury has been infringed. Plaintiffs have already been pulled into an IPU administrative proceeding with no opportunity to demand a jury trial. If Plaintiffs have a right to a trial by jury on Delaware Securities Act claims, that right has already been infringed by the commencement of the IPU Action.[33]

---

[31] 10 *Del. C.* § 6501.

[32] MTD at 6-8.

The parties agreed to stay the IPU proceeding while the Superior Court adjudicated the constitutional issues Plaintiffs raise. Am. Compl. ¶¶ 50-51. Now arguing the case is not ripe, the IPU apparently reversed its position.

[33] *See Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 192 (2023) (holding that the "here-and-now" injury of being subjected to an unconstitutional adjudicative process enables a litigant to raise a constitutional challenge before the close of an administrative proceeding).

The IPU invokes *Blankenship v. FINRA*. 2024 WL 4043442, at *2 (E.D. Pa. Sept. 4, 2024). In *Blankenship*, the court found it lacked subject matter jurisdiction to hear Seventh Amendment constitutional claims regarding an ongoing proceeding. *Id.* at *3. The court explained that the plaintiff would only be injured if the defendant "took certain allegedly unconstitutional steps to

6

A "[d]eclaratory judgment is intended to provide a remedy where no other remedy is available under circumstances where an impending injury has *not as yet occurred*. It establishes the legal rights of a party *before* the party is injured, although injury is anticipated."[34] The potential that Plaintiffs may imminently incur liability in a purportedly unconstitutional proceeding is sufficient for a claim under the Declaratory Judgment Act.

> ### 2. The Court will not apply the doctrine of exhaustion of administrative remedies.

The IPU argues the Court should apply the doctrine of exhaustion of administrative remedies and order the IPU proceeding be completed before this Court addresses Plaintiffs' alleged right to a trial by jury.[35] Under the doctrine of exhaustion of administrative remedies, Delaware courts require "that where a remedy before an administrative agency is provided, relief must be sought by exhausting this remedy before the courts will either review any action by the agency or provide an independent remedy."[36] The decision to apply the doctrine is "a matter

---

injure him." *Id*. at *2. The court noted, "if this case were a challenge to the very constitutionality of [the administrative act's] structure, the result might be different." *Id*. at *2 n.4. Such a facial challenge is presented here. The action taken by the IPU – a prosecution without jury trial – has already occurred.

[34] *First State Orthop., P.A. v. Liberty Mut. Ins. Co.*, 2020 WL 6875219, at *4 (Del. Super. Nov. 20, 2020) (citation modified) (emphasis added); *see also Schick Inc. v. Amalgamated Clothing and Textile Workers Union*, 533 A.2d 1235, 1237–38 (Del. Ch. 1987) (citations omitted) (explaining "the declaratory judgment action is designed to promote preventive justice.").

[35] MTD at 7-8.

[36] *Levinson v. Del. Comp. Rating Bureau, Inc.,* 616 A.2d 1182, 1187 (Del. 1992) (citation omitted).

7

of judicial discretion."[37] "It applies only where a claim must be initiated before an administrative agency which has exclusive jurisdiction over the matter and is able to provide an adequate remedy."[38]

The doctrine of exhaustion of administrative remedies will not apply if the presumption in favor of its application can be overcome by a showing of one of four conditions:

- That finishing the administrative proceeding would be futile;

- That public interest creates the need for a prompt resolution;

- That the issue is a question of law only, not a matter of administrative expertise; or

- That irreparable harm would result from the court's denial of relief.[39]

Three of the four conditions justifying refusal to apply the doctrine of exhaustion of administrative remedies are present. In the instant case, forcing the completion of the administrative proceeding would be futile, as the IPU will not determine whether there is a right to trial by jury in its administrative proceeding. In the October 30 Order, the Presiding Officer already declined to hear any constitutional questions during the IPU Action.[40] Waiting for the IPU Action's

---

[37] *Id*. at 1189.
[38] *Id*. at 1187.
[39] *Eckeard v. NPC Int'l, Inc.,* 2012 WL 5355628, *at 3 (Del. Super. Oct. 17, 2012) (citing *Levinson*, 616 A.2d at 1190).
[40] Am. Compl. ¶ 46.

8

conclusion will not facilitate resolution of the constitutional question regarding the right to trial by jury presented in this action.

There is a strong public interest in favor of prompt resolution, as Plaintiffs raise constitutional concerns that may affect Delaware's entire administrative law system. Finally, the right to a jury trial is a question of law, and is not a matter in the IPU's expertise, which concerns securities law. For all of these reasons, Plaintiffs are not required to exhaust their administrative remedies before pursuing their claim regarding the right to trial by jury.

### 3. The claim alleging a violation of the right to trial by jury is ripe.

In determining whether a controversy is ripe, Delaware courts adopt a "common sense" approach.[41] The court balances the interests of the party seeking immediate relief against the efficiency of refraining from addressing issues that are still developing.[42] A dispute is ripe if "litigation sooner or later appears to be unavoidable and where the material facts are static."[43]

Five factors are relevant in assessing ripeness: (1) a practical evaluation of the plaintiff's legitimate interests in a prompt resolution of the question presented; (2) the hardship threatened by further delay in resolving the question; (3) the possibility that future factual development might affect the resolution; (4) the need to conserve

---

[41] *Viacom Inc. v. U.S. Specialty Ins. Co.*, 2023 WL 2034445, at *2 (Del. Super. Feb. 16, 2023).
[42] *XL Specialty Ins. Co. v. WMI Liquidating Trust*, 93 A.3d 1208, 1217 (Del. 2014).
[43] *Id*. at 1217 (quoting *Julian v. Julian*, 2009 WL 2937121, at *3 (Del. Ch. Sept. 9, 2009)).

scarce judicial resources; and (5) respect for identifiable policies of law concerning the matter in dispute.[44] All five factors support a finding of ripeness for the right to trial by jury claim.

Plaintiffs face potential liability in what they argue is a facially unconstitutional administrative proceeding. Such a concern is legitimate. Should this Court determine the procedure is unconstitutional, Plaintiffs would no longer face liability in a defunct IPU proceeding. If, on the other hand, the Court refused to issue an opinion on the constitutionality of the IPU's procedures until after Plaintiffs lose the IPU Action, and ultimately appeal the IPU's decision, Plaintiffs would face hardship from the liability imposed by the IPU and the delay imposed by this Court. The first and second factors weigh in favor of ripeness.

No further factual development in the underlying IPU proceeding is necessary. The IPU's determination on Plaintiffs' liability for Delaware Securities Act violations has no bearing on whether the IPU's procedure is unconstitutional for failure to provide a jury. The third factor weighs in favor of ripeness.

By resolving Plaintiffs' claim now, this Court promptly addresses serious constitutional law issues, enabling the entire Delaware legal system to respond as necessary. The fourth factor weighs in favor of ripeness.

---

[44] *Schick*, 533 A.2d at 1239.

Plaintiffs and the IPU are engaged in an actual dispute over the parameters of the Delaware Constitution's right to trial by jury.

> [The fifth] factor requires the Court to consider the appropriateness of determining an issue at the time it is presented to the Court. Cases are only able to be decided by Delaware courts when the issue is fully and fairly presented as an actual controversy. In situations where a case is not an actual controversy, facts might not be fully developed and the parties might not dedicate the same amount of resources—thereby affecting the development of law.[45]

This dispute, a question of constitutional interpretation, can be resolved now. The fifth factor weighs in favor of ripeness. Plaintiffs' right to a trial by jury claim (Count I) is ripe.[46]

### C. Plaintiffs Have No Right to a Trial by Jury in the DOJ Proceeding.

The IPU moves to dismiss Count I of Plaintiffs' Amended Complaint, arguing that the right to a trial by jury pursuant to Article I, Section 4 of the Delaware Constitution is inapplicable to the IPU's in-house adjudications.[47] Plaintiffs, relying

---

[45] *Homeland Ins. Co. of New York v. Corvel Corp.*, 2011 WL 7122367, *6 (Del. Super. Nov. 30, 2011).

[46] The IPU, in its reply brief and at oral argument, invokes *Burris v. Cross* to argue that Plaintiffs' claims are overripe. 583 A.2d 1364 (Del. Super. 1990); D.I. 18 ["MTDR"] at 4; Tr. 9:13-20. Argument concerning the overripeness factors in *Burris* should have been addressed in the IPU's opening brief. Even in its reply brief, the IPU does not articulate how the overripeness factors apply here. The Court deems any argument regarding overripeness waived. *Murphy v. State*, 632 A.2d 1150, 1152 (Del. 1993) ("The failure to raise a legal issue in the text of the opening brief generally constitutes a waiver of that claim"); *see also Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) (citing *Murphy*, 632 A.2d at 1152) ("Issues not briefed are deemed waived.").

[47] MTD at 10. The IPU also argues Plaintiffs waived any right to trial by jury. *Id.* at 11-14. This argument is primarily premised on the application of the Delaware Superior Court Rules of Civil Procedure to the administrative proceeding. The Rules of Civil Procedure do not apply to the IPU Action. *Compare* Super. Ct. Civ. R. 1 ("These Rules shall govern the procedure in the Superior Court. . ."), *with* 6 *Del. Admin. C.* § 200(a) ("Part B of the Rules (Rule 200 through Rule 272)

11

heavily on the Supreme Court of the United States' Opinion in *Securities &*

*Exchange Commission v. Jarkesy*,[48] counter that they are entitled to a trial by jury.[49]

With no factual issues to resolve, the Court will determine the applicability of Article

I, Section 4.[50]

1. *The recent Supreme Court of the United States decision in Securities &*
*Exchange Commission v. Jarkesy*

In *Securities & Exchange Commission v. Jarkesy*, the Supreme Court of the

United States considered whether the Seventh Amendment of the United States

Constitution permits the SEC to adjudicate securities fraud claims before an

administrative law judge rather than before a jury in federal court.[51]  The Supreme

Court determined that the Seventh Amendment prohibited the SEC from

adjudicating securities fraud claims without a jury trial.[52]  The Supreme Court

focused on the remedy sought in the securities fraud claims, explaining that the SEC

sought punitive damages for wrongdoing, and these damages were "a type of remedy

at common law that could only be enforced in courts of law."[53]  The Supreme Court

---

governs proceedings before Presiding Officers . . ..").  The IPU argues Plaintiffs are estopped from raising constitutional objections this late in the proceeding but offers nothing in the rules of procedure for the administrative proceeding which required Plaintiffs to raise their objections sooner.  MTD at 13-14.  The IPU's waiver argument is unfounded.

[48] 603 U.S. 109 (2024).

[49] MTD Opp'n at 16.

[50] *See, e.g.*, *Mennella v. Albence*, 2024 WL 758606, at *1 (Del. Super. Feb. 23, 2024) (granting declaratory judgment on constitutionality of a Delaware statute at motion to dismiss stage), *rev'd on other grounds by Albence v. Mennella*, 320 A.3d 212 (Del. 2024).

[51] *Jarkesy*, 603 U.S. at 140.

[52] *Id.* at 139.

[53] *Id.* at 124 (citation omitted).

analogized statutory securities fraud to common law fraud, explaining that the two causes of action share a "close relationship,"[54] but acknowledging that they are not identical and that "securities fraud is narrower."[55]

Both *Jarkesy* and the instant case concern the validity of resolving securities fraud claims through administrative proceedings rather than jury trials.[56] Factual similarities between the cases do not necessarily command the same legal result under two different constitutions: the Delaware Constitution and the United States Constitution.

2. *The Seventh Amendment analysis is inapplicable to the instant case.*

The Seventh Amendment's guarantee of jury trials in civil proceedings is one of few provisions of the Bill of Rights that does not apply to the states through the Incorporation Doctrine of the Fourteenth Amendment of the United States Constitution.[57] When a provision of the Bill of Rights applies to the states, the applicable provision of the United States Constitution establishes "a minimum, the least protection that a State may provide to its citizens."[58] States are free to establish

---

[54] *Id.*

[55] *Id.* at 126. The Court also refuted the application of the "public rights exception" to the Seventh Amendment.

[56] Am. Compl. ¶¶ 1-2.

[57] *McCool v. Gehret*, 657 A.2d 269, 281 (Del 1995). *See also Walker v. Sauvinet*, 92 U.S. 90, 92 (1875) ("The States, so far as [the Seventh Amendment] is concerned, are left to regulate trials in their own courts in their own way.").

[58] *Sanders v. State*, 585 A.2d 117, 145 (Del. 1990).

13

broader protections than said "minimum."[59]  For those few provisions of the Bill of

Rights that are not applicable to the states, like the Seventh Amendment, States need

not adhere to the standards established by the United States Constitution.

As the Supreme Court of Delaware declared, "it is untenable to conclude that

the right to trial by jury in the Delaware Constitution means exactly the same thing

as that right in the United States Constitution."[60]  Settled Delaware law reveals

examples of deviation between the Delaware and Federal Constitutions' rights to

trial by jury in civil cases.  Delaware, maintaining separate courts of law and equity,

vests its Court of Chancery with the power to resolve some legal claims without a

trial by jury pursuant to the Cleanup Doctrine.[61]  In federal courts, in cases in which

legal and equitable issues commingle, litigants are entitled to a jury trial on the legal

claim and any factual issues common to the legal and equitable claims.[62]

Because the Seventh Amendment does not apply to Delaware, this Court is

not bound by the ruling in *Jarkesy*.[63]  The Court must analyze Article I, Section 4 of

---

[59] *Id.*

[60] *Claudio v. State*, 585 A.2d 1278, 1298 (Del. 1991).

[61] *See, e.g., FirstString Rsch., Inc. v. JSS Med. Rsch. Inc.*, 2021 WL 2182829, at *10 (Del. Ch. May 28, 2021) ("Delaware stayed stalwartly in the traditionalist camp, first bucking the mid-nineteenth century trend of merging courts of law and equity, and then maintaining the viability of the clean-up doctrine over a right to jury trial as to intertwined issues.")

[62] *Tull v. United States*, 481 U.S. 412, 425 (1987) (citation omitted).

[63] *See In re Investigation Pursuant to 30 V.S.A. Sec. 30 & 209*, 2024 VT 58, ¶ 31 (Vt. Aug. 30, 2024) (explaining "the Seventh Amendment is not applicable to state courts, and *Jarkesy* is therefore nonbinding on this Court").

14

the Delaware Constitution to determine whether Delaware Securities Act claims must be resolved through a trial by jury.

The provision for the right to a trial by jury in the Delaware Constitution is not verbose. Article I, Section 4 of the Delaware Constitution provides: "[t]rial by jury shall be as heretofore."[64] This language was first included in the Delaware Constitution of 1792.[65] The Supreme Court of Delaware explained this language "demonstrates an unambiguous intention to equate Delaware's constitutional right to trial by jury with the common law characteristics of that right."[66]

Under the Supreme Court of the United States' Seventh Amendment analysis, federal courts look to the remedy sought to determine if a claim must be heard by a jury in federal court.[67] Delaware, by contrast, looks to whether the cause of action received a trial by jury at common law.[68]

---

[64] Del. Const. art. I § 4.

[65] *Claudio*, 585 A.2d at 1298.

[66] *Id.*

[67] *Tull*, 481 U.S. at 421 ("We reiterate our previously expressed view that characterizing the relief sought is '[m]ore important' than finding a precisely analogous common-law cause of action in determining whether the Seventh Amendment guarantees a jury trial."); *See also Jarkesy*, 603 U.S. at 123. ("In this case, the remedy is all but dispositive.").

[68] *State v. Cahill*, 443 A.2d 497, 499 (Del. 1982) ("In examining a pure civil non-support enforcement action, it is clear that *such an action* did not exist in a non-statutory form at law.") (emphasis added); *McCool v. Gehret*, 657 A.2d 269, 282 (Del. 1995) ("A *sine qua non* of that common law jurisprudence is the principle that either party shall have the right to demand a jury trial upon an issue of fact in *an action at law*.") (emphasis added); *Bon Ayre Land LLC v. Bon Ayre Cmty. Assn.*, 2015 WL 893256, at *4 (Del. Super. Feb. 26, 2015) ("[A]bsent a newly created statutory right to trial by jury, if the right for a particular cause of action did not exist at common law, then it does not exist today."), *rev'd on other grounds*, 133 A.3d 559 (Del. 2016).
    Other jurisdictions, sharing similar state constitutional provisions for the right to a trial by jury, follow this same cause-of-action-oriented analysis. *See State v. Schweda*, 736 N.W.2d 59, 59

15

In *State v. Cahill*, the Supreme Court of Delaware examined whether the right to a trial by jury applied to a civil non-support enforcement action in Delaware Family Court.[69] The Supreme Court concluded that the right to a trial by jury did not apply, explaining that "such an action did not exist in a non-statutory form at law."[70] The Supreme Court noted that actions brought for the support of a "legitimate child" were historically equitable, and that an action for the support of an "illegitimate child" did not exist at common law.[71] *Cahill* demonstrates that a "new statutory cause of action," unlike a common law cause of action, can be resolved without a trial by jury if the General Assembly intended for the statutory cause of action to be resolved without a jury.[72]

---

n.9 (Wis. 2007) ("We determine whether (1) the cause of action existed, was known, or was recognized at common law in 1848 and (2) whether the cause of action was regarded as at law in 1848."); *Wertz v. Chapman Twp.*, 741 A.2d 1272, 1278 (Pa. 1999) (stating "this court has eschewed a focus on the remedy sought and has embraced a view which looks to the cause of action in determining the right of a jury trial pursuant to Article I, Section 6 of our Constitution.").

[69] *State v. Cahill*, 443 A.2d 497, 499 (Del. 1982).

[70] *Id*.

[71] *Id*. at 499-500.

[72] *Id*. at 500. The Court also notes a footnote in *Cahill*, which characterizes the federal view of the federal constitutional right to a jury as "expansive." *Id*. at 499 n.5. The use of the adjective "expansive" indicates the right to a jury under the Delaware Constitution may be more limited than that of the federal constitution.

*3. Under the Delaware Constitution's analytical framework, there is no requirement for a trial by jury in securities fraud actions brought under the Delaware Securities Act.*

Plaintiffs, pointing to the analysis in *Jarkesy*, argue the elements of securities fraud are analogous to those of common law fraud, so the right to a trial by jury must attach to securities fraud actions as it does to common law fraud actions.[73]

The analogy between common law fraud and securities fraud is imperfect. To succeed in bringing a common law fraud claim, a litigant must prove five elements:[74]

1. a false representation, usually one of fact, made by the defendant;
2. the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth;
3. an intent to induce the plaintiff to act or to refrain from acting;
4. the plaintiff's action or inaction taken in justifiable reliance upon the representation; and
5. damage to the plaintiff as a result of such reliance.

In *Hubbard v. Hibbard Brown & Co.*,[75] the Supreme Court of Delaware defined the elements for a securities fraud claim brought under the Delaware Securities Act:

1. the defendant made a misstatement or omission
2. of material fact
3. with scienter
4. in connection with a purchase or sale of a security

---

[73] MTD Opp'n at 19.

[74] *Brady ex rel. v. Publishers Clearing House*, 787 A.2d 111, 116 (Del. Ch. 2001) (also noting the absence of a reliance or scienter element in a statutory fraud claim); *DCV Holdings, Inc. v. ConAgra, Inc.*, 889 A.2d 954 (Del. 2005).

[75] 633 A.2d 345 (Del. 1993), *superseded*.

17

5. upon which the plaintiff (or another person if the action is brought by the Delaware Securities Division) relied and

6. that reliance proximately caused the plaintiff's (or other person's) injury.[76]

The Supreme Court of Delaware's decision relied upon a Third Circuit securities fraud case brought by a private litigant, not the Government.[77]

The IPU argues *Hubbard* incorrectly established the pleading standard for government-brought securities fraud claims as the Supreme Court defined identical elements for private and government-brought actions.[78] After *Hubbard*, the Delaware General Assembly passed a 2013 amendment to the Delaware Securities Act, adding the following language to Section 73-201:

> In interpreting this Section, courts will be guided by the interpretations given by Federal Courts to similar language set forth in Section 17(a) of the Securities Act of 1933 and Rule 10b-5 promulgated under the Securities Exchange Act of 1934, to include, without limitation, *any difference in pleading requirements governing actions brought by securities regulators as opposed to private litigants.*[79]

Partially superseding the ruling in *Hubbard*, this amendment clearly indicates that the legislature intended for a different pleading standard when the government brings a securities fraud claim, and that this Court should look to federal caselaw in

---

[76] *Id*. at 349 (citation modified).

[77] *Id*. (citing *In re Phillips Petroleum Sec. Litig.*, 881 F.2d 1236 (3d Cir. 1989)).

[78] D.I. 29 ["IPU Supp."] at 7.

[79] 6 *Del. C.* § 73-201 (citation modified) (emphasis added).

identifying the appropriate elements for a government-brought securities fraud claim.[80]

Various federal caselaw indicates securities fraud claims, when brought by the government, do not require proof of reliance.[81] Accordingly, the IPU need not prove reliance in its action against Plaintiffs.[82]

The IPU brought securities fraud actions against Plaintiffs under 6 *Del. C.* § 73-201(2)-(3), provisions based on Sections 17(a)(2)-(3)[83] of the Federal Securities Act of 1933.[84] According to the Supreme Court of the United States – for actions brought under Sections 17(a)(2)-(3) of the 1933 Act – the government need not prove

---

[80] In 2023, the Court of Chancery employed the elements for securities fraud described in *Hubbard*, and was subsequently affirmed by the Supreme Court of Delaware. *Promise Easy Ltd. v. Moon*, 2023 WL 5152173, at *16 (Aug. 10, 2023), *judgment entered*, (Del. Ch. 2023), *aff'd*, 320 A.3d 194 (Del. 2024). *Promise Easy* is distinct from the instant case, as the securities fraud action in *Promise Easy* was brought by a private litigant, not the IPU.

[81] *See, e.g*, *Sec. Exch. Comm'n v. Goble*, 682 F.3d 934, 943 (11th Cir. 2012) ("Because this is a civil enforcement action brought by the SEC, reliance, damages, and loss causation are not required elements."); *McCann v. Hy-Vee, Inc.*, 663 F.3d 926, 931 (7th Cir. 2011) (stating "although the SEC doesn't have to prove reliance on a misrepresentation, a private party would have to, as otherwise he would have suffered no injury"); *Sec. Exch. Comm'n v. Tambone*, 597 F.3d 436, 447 n.9 (1st Cir. 2010) (noting the SEC need not prove reliance in a 10b-5 case); *Geman v. Sec. Exch. Comm'n*, 334 F.3d 1183, 1191 (10th Cir. 2003) ("The SEC is not required to prove reliance or injury in enforcement actions."); *United States v. Haddy*, 134 F.3d 542, 550 (3d Cir. 1998) ("Section 10(b)'s omission of reference to a particular victim is compelling evidence that investor reliance is not required for a securities fraud conviction.")

[82] *In re Swan Energy, Inc., Brandon Davis, John Schiffner, Cody Davis, and Dale Frank Phillips, Respondents*, 2022 WL 22672888, at *18 (Del. Div. Sec. Mar. 30, 2022).

[83] 15 U.S.C. § 77q.

[84] *Swan Energy*, 2022 WL 22672888, at *18; *See also* 6 *Del. C.* § 73-201 (stating "courts will be guided by the interpretations given by federal courts to similar language set forth in § 17(a) of the Securities Act of 1933").

19

scienter.[85]  It follows that the government need not prove scienter when bringing an action under the Delaware Securities Act.[86]

Common law fraud and securities fraud serve different purposes.  In IPU securities fraud claims, Delaware asserts its own right to protect its citizens – there is not a plaintiff seeking to remedy his/her own injuries.[87]

In light of the differences in the elements and purposes of common law fraud and securities fraud, plaintiffs have not shown, by clear and convincing evidence, that the right to a trial by jury applies to securities fraud actions brought by the government under the Delaware Securities Act.[88]  The "strong presumption"[89] of the constitutionality of the Delaware Securities Act is not overcome by plaintiff's *Jarkesy*-inspired argument.

The Superior Court of Delaware previously addressed the right to trial by jury in a government-brought statutory fraud action, reaching the same conclusion as the Court in the instant case.  In *Blue Beach Bungalows DE, LLC v. Delaware*

---

[85] *Aaron v. Sec. & Exch. Comm'n*, 446 U.S. 680, 696-97 (1980).

[86] *Swan Energy*, 2022 WL 22672888, at *18.
Delaware securities fraud claims also have a longer statute of limitations period than common law fraud claims.  Enforcement claims under the Delaware Securities Act must be brought within 5 years of a violation.  *See* 6 *Del. C.* § 73-503.  Common law fraud claims must be brought within 3 years of the injury.  *Winklevoss Cap. Fund, LLC v. Shaw*, 2019 WL 994534, at *5 (Del. Ch. Mar. 1, 2019).

[87] *See* 6 *Del. C.* § 73-101(b) ("The purpose of the Delaware Securities Act is to prevent the public from being victimized").

[88] *Higgin*, 295 A.3d at 1088-1089 (citation omitted).

[89] *Op. of Justs*, 425 A.2d at 605 ("Initially, we note the strong judicial tradition in Delaware in support of a presumption of the constitutionality of a legislative enactment.").

*Department of Justice Consumer Protection Unit*, the Superior Court determined the right to a trial by jury did not apply to statutory fraud claims brought via an administrative proceeding under the Consumer Fraud Act ("CFA").[90] The court articulated the differences in elements between claims under the CFA and common law fraud.[91] The court concluded differences in the elements of the causes of action prevented a perfect analogy between claims under the CFA and common law fraud, and this "grey area" prevented a finding of unconstitutionality.[92]

Similarly, in *Ridlon v. New Hampshire Bureau of Securities Regulation*, the Supreme Court of New Hampshire declined to apply the state constitutional right to trial by jury to that state's securities fraud claims, reasoning "the administrative proceeding brought against Ridlon by the secretary under the Securities Act is not analogous to common law fraud or deceit because it require[s] proof of significantly different elements and satisfaction of a different standard of proof."[93]

That this Court's conclusion contrasts with *Jarkesy* is understandable. The test for determining the application of the Seventh Amendment right to trial by jury focuses on remedies.[94] Under the Seventh Amendment analysis, it is unnecessary to

---

[90] 2024 WL 4977006, at *14 (Dec. 4, 2024), *amended*, 2024 WL 5088688 (Del. Super. Dec. 12, 2024).

[91] *Id.*

[92] *Id.*

[93] *Ridlon v. New Hampshire Bureau of Sec. Regulation*, 214 A.3d 1196, 1204 (N.H. 2019) (citation modified).

[94] *Tull*, 481 U.S. at 421 ("We reiterate our previously expressed view that characterizing the relief sought is '[m]ore important' than finding a precisely analogous common-law cause of action in

find a "close analogue to the modern cause of action at issue"[95] in the common law of the late eighteenth century, as "the fact that the subject matter of a modern statutory action and an eighteenth century English action are close equivalents is irrelevant for Seventh Amendment purposes, because that Amendment requires trial by jury in actions *unheard of at common law*."[96]  The same is not true in Delaware, where the Delaware Constitution's provision enumerating the right to a trial by jury "demonstrates an unambiguous intention to *equate* Delaware's constitutional right to trial by jury with the *common law characteristics* of that right."[97]

---

determining whether the Seventh Amendment guarantees a jury trial."); *See also Jarkesy*, 603 U.S. at 123. ("In this case, the remedy is all but dispositive.").

 Citing to *Am. Appliance, Inc. v. State ex rel. Brady* and *Getty Ref. & Mktg. Co. v. Park Oil, Inc.*, Plaintiffs assert the remedy sought is dispositive in the instant case, comparing the IPU Action's desired civil penalties to a common law action of debt.  MTD Opp'n at 27-29.  712 A.2d 1001 (Del. 1998); 385 A.2d 147 (Del. Ch. 1978), *aff'd*, 407 A.2d 533 (Del. 1979).  Neither case articulates a remedies-oriented test for determining if the right to trial by jury applies to a cause of action.  At most, these cases muddy the waters when analyzing the right to trial by jury, but still do not enable a finding, by clear and convincing evidence, that the Securities Act is unconstitutional.  The Court relies on other Delaware caselaw which indicates the cause-of-action-focused test, rather than a remedies-focused test.

[95] *State v. Schweda*, 736 N.W.2d 59, 59 n.9 (Wis. 2007).

[96] *Tull*, 481 U.S. at 420 (citation modified) (emphasis added).

[97] *Claudio*, 585 A.2d at 1298 (emphasis added); *See also Cahill*, 443 A.2d at 500 (declining to apply the right to a trial by jury to a cause of action which did not exist at common law).

 Plaintiffs direct the Court to *American Appliance*.  712 A.2d 1001.  In *American Appliance*, the Supreme Court of Delaware found that the Superior Court had jurisdiction to hear an action for civil penalties.  *Id*. at 1002.  The Supreme Court reasoned that an action for civil penalties was "akin to a common law action to recover a debt."  *Id*. at 1003.  The Supreme Court, including the following quote from *Tull*: "[a] civil penalty was a type of remedy at common law that could only be enforced in courts of law."  *Id*. at 1003 n.10 (citing *Tull*, 481 U.S. at 422).  Plaintiffs contend this evidences a remedies-focused analysis in Delaware's jurisprudence addressing the right to trial by jury.  Tr. 57:12-59:9.  The Court is not convinced.  *American Appliance* addresses the Superior Court's subject matter jurisdiction, not the right to trial by jury.  *Cahill* indicates that the focus should be directed towards identifying any closely analogous common law cause of action for the cause of action at issue.  *Cahill*, 443 A.2d at 500; *see also Bon Ayre*, 2015 WL 893256, at *4 ("[A]bsent a newly created statutory right to trial by jury, if the right for a particular cause of action

22

Government-brought securities fraud claims, such as those brought against Plaintiffs, are a "new statutory" cause of action to which the right to trial by jury was not intended to apply.[98] Plaintiffs have not demonstrated by clear and convincing evidence that government-brought securities fraud is sufficiently analogous to common law fraud to justify a finding of unconstitutionality.

4. *The right to a trial by jury does not apply to claims alleging violations of 6 Del. C. § 73-202.*[99]

Plaintiffs contend they have a right to trial by jury for the claims in which the IPU alleges Plaintiffs sold securities without proper registration in violation of 6 *Del. C. § 73-202.*[100] Plaintiffs cite 16th and 17th-century English caselaw, contending similar claims were brought before a jury, under English statutes, before the enactment of the Delaware Constitution.[101] Plaintiffs note the English statutes themselves explicitly provided for a right to trial by jury in such statutory actions.[102]

---

did not exist at common law, then it does not exist today.") (rev'd on other grounds). *Tull* indicates the opposite. 481 U.S. at 420 (explaining "the fact that the subject matter of a modern statutory action and an [eighteenth] century English action are close equivalents 'is irrelevant for Seventh Amendment purposes,' because 'that Amendment requires trial by jury in actions unheard of at common law.'").

[98] *See Cahill*, 443 A.2d at 500 (declining to apply the right to a trial by jury to a "new statutory" cause of action).

[99] Plaintiffs contend the IPU waived argument regarding the differences in elements between 6 *Del. C.* § 73-202 and analogous common law causes of action by failing to address the subject in their supplemental brief. D.I. 29 at 2 n.1. The Court did not request briefing on that issue, instead requesting briefing regarding the elements of action brought under 6 *Del. C.* § 73-201(2)-(3). The IPU did not fail to brief the issue, as the IPU was not asked to do so. As explained in this section, there is no analogous common law cause of action for selling securities without registration.

[100] MTD Opp'n at 25.

[101] *Id*. at 25-26.

[102] *Id*.

Delaware did not adopt all of the English statutes in effect at the time of independence.[103] As articulated in the Delaware Constitution of 1776, "the common law of England, *as-well as* so much of the statute law as has been heretofore adopted in practice in this State, shall remain in force, unless they shall be altered by a future law of the legislature."[104] The Delaware Constitution of 1776 thus treats statutes and common law as separate bodies. For an English statute on securities registration to remain effective post-independence, it must have been adopted in Delaware in 1776.

As discussed above, the Delaware Constitution's right to trial by jury preserves the right as it existed under the common law.[105] "Common law" is not defined in the Delaware Constitution of 1792. Black's Law Dictionary defines common law as "the body of law derived from judicial decisions, *rather than from statutes* or constitutions."[106]

Plaintiffs offer no evidence showing pre-1776 English securities registration statutes were adopted by Delaware by 1776. Even if any English securities registration statutes remained in effect after the Declaration of Independence, the right to trial by jury they provided was a product of those statutes, not of common

---

[103] This is understandable, as the Declaration of Independence arose out of many objected-to English statutes.

[104] Del. Const. of 1776 art. 25 (emphasis added).

[105] *Claudio*, 585 A.2d at 1298.

[106] *Common Law*, Black's Law Dictionary (12th ed. 2024) (emphasis added). *See also* Karen Lynn Valihura, *Creating Common Law in the Corporate Context, Delaware Style*, 25 Univ. of Penn. J. of Bus. L. 1, 1 (2023) (citing the Black's Law Dictionary definition for "Common Law").

law. Plaintiffs fail to identify a common law cause of action for selling unregistered securities which was tried by jury.

As in *Cahill*, actions brought for the sale of securities without registration, pursuant to 6 *Del. C.* § 73-202, "did not exist in a non-statutory form" in Delaware's jurisprudential history.[107] Instead, these actions are "based on a new statutory cause of action intended by the General Assembly to be tried without a jury."[108]

The legislature did not require jury trials for actions brought by the IPU under 6 *Del. C.* § 73-202, and their determination receives a "strong presumption" of constitutionality.[109] Plaintiffs have failed to demonstrate 6 *Del. C.* § 73-202 is unconstitutional by clear and convincing evidence.[110] The right to a trial by jury under Article I, Section 4 of the Delaware Constitution does not apply to 6 *Del. C.* § 73-202.

**CONCLUSION**

For the reasons explained above, the IPU's Motion to Dismiss Counts I and II of Plaintiffs' Amended Complaint is **GRANTED**.

**IT IS SO ORDERED.**

/s/ Meghan A. Adams

**Meghan A. Adams, Judge**

---

[107] *Cahill*, 443 A.2d at 499.
[108] *Id*. at 500.
[109] *Op. of the Justs*, 425 A.2d at 605 ("Initially, we note the strong judicial tradition in Delaware in support of a presumption of the constitutionality of a legislative enactment.").
[110] *Higgin*, 295 A.3d at 1088-1089 (citation omitted).